**GENERAL ELECTRIC CREDIT CORPORATION, Appellant,**

v.

**Mary FANCHER, Appellee.**

Court of Appeals of Kentucky.

Dec. 1, 1978.

William R. Mapother, Rose Ann Willenbrink, Mapother & Mapother, Louisville, for appellant.

Robert L. Dowell, Greensburg, for appellee.

Before HAYES, PARK and REYNOLDS, JJ.

HAYES, Judge.

This is an appeal by the appellant General Electric Credit Corporation, a secured creditor, from a judgment finding that its security interest in a mobile home was not properly perfected since it was not filed of record in the county of residence of the debtor, and that the appellee Mary Fancher, the purchaser of the mobile home at a sheriff's sale, took title thereto free and clear of the appellant's security interest.

The facts are simple and uncontradicted. On February 6, 1974, James Burton, a resident of Casey County, Kentucky, purchased a 1973 Savannah mobile home. Burton executed a vehicle transfer and assumption agreement that date, whereby he assumed the prior indebtedness to the appellant. Appellant, on February 8, 1974, filed this agreement in the Office of the Casey County Clerk.

In June, 1974, Burton moved to Metcalfe County, Kentucky, where in April, 1975, the Savannah mobile home was destroyed by fire.

On April 15, 1975, Burton obtained, through the efforts of appellant and from the proceeds of the insurance claim on the fire loss, a 1972 Glennwood mobile home. Burton executed a substitution agreement whereby he, Burton, agreed to substitute the Glennwood for the Savannah mobile home and that the provisions of the original contract would apply in all other respects.

The Glennwood mobile home was shipped to Burton in Metcalfe County. Appellant had knowledge of this shipment to Burton in Metcalfe County.

Appellant filed the amended financing statement in the office of the Casey County Clerk on June 26, 1975, the same office where the original statement had been filed.

Sometime thereafter, a creditor of Burton obtained a judgment against him and levied an execution against the Glennwood mobile home. At the execution sale, the appellee, Mary Fancher, purchased the mobile home. Thereafter Burton defaulted in his obligation to appellant; an action for replevin of the Glennwood mobile home was filed in Metcalfe County, and appellee was granted a judgment because appellant's security interest was not properly perfected.

The sole issue in this case is where an amendment to a financing statement must be filed. May it be filed in the county where the original statement is filed, or must it be filed in the county of the debtor's residence, if that residence is in a county other than where the original statement was filed?

This is a case of obvious first impression in Kentucky, and there is no specific Uniform Commercial Code provision that governs this issue. The authorities we have found on this issue obviously differ on the resolution of this issue; however, the better view, in our opinion, is that the amendment should be filed in the county which is the debtor's residence at the time the amendment is filed.

KRS 355.9–401(1)(b) states the proper place to file a financing statement for consumer goods is in the county of the debtor's residence. Unfortunately it fails to state at what point in time the debtor's residence is to be determined. An interpretation of this provision is critical because the term "financing statement" means original financing statement and any amendments. KRS 355.9–402(5).

Two possible interpretations of KRS 355.-9–401(1)(b) include the view that the amendment is to be filed in the county which is the debtor's residence at the time the original financing statement was filed, and the view that the amended financing statement is to be filed in the county which is the debtor's residence at the time of the amendment. The former interpretation reflects a desire not to burden the secured party through onerous filing procedures. The latter interpretation stresses opportuni-

ty for notice and thus, protection of subsequent buyers or creditors of the property. The authorities discussing the issue have urged one interpretation or the other depending on their view of which party the code was most designed to protect.

In *In Re Simpson*, 4 UCC Rep.Serv. 250 (1966), a case relied upon by appellant, the U. S. District Court for the Western District of Michigan addressed the issue of where an amendment should be filed, and held that the proper place to file an amendment to a financing statement was in the same office as the original regardless of any change in residence. *Id.* at 255. However, it is noted that the financing statement in *In Re Simpson* was required to be centrally and locally filed. Apparently, under the local filing system in Michigan in existence at the time, a prospective purchaser or creditor must examine the records of the office of the Register of Deeds for every county in which the debtor has lived. *Id.* at 255. Had the original financing statement not been centrally filed, the holding might have been different:

> To not require central filing would add to the burden of one making a search the necessity of checking every county in the state. But here the central filing would place the examiner on notice and an inquiry in Berrien County would readily disclose the amendment. *Since reasonable notice is given and having in mind that the purposes of the Act are to simplify the law and to permit expansion of commercial practices through custom, usage, and agreement of the parties, I hold that the amendment to the financing statement was properly filed . . . Id.* at 255–256. (Emphasis added).

It is doubtful that the court in *In Re Simpson, supra*, would find reasonable notice would be given to the subsequent purchaser or creditor where local filing does not put the subsequent purchaser on notice. It is further noted that the holding in *In Re Simpson, supra*, has been attacked on the theory that since the original financing statement is no longer filed in the proper place, amending that financing statement

cannot perfect a security interest in new collateral. G. Wallach, "Perfecting and Reperfecting Security Interests under the Uniform Commercial Code", 30 *Bus. Law* 447, 455 (1975). This criticism is consistent with the holding in *In Re Pelletier*, 5 UCC Rep.Serv. 327 (D.Maine 1966), the case relied upon by appellee, Mary Fancher. In *In Re Pelletier*, the court held the proper time for determining the place to file a financing statement is the date the security interest attaches. The court based its decision on the necessity of providing public notice. It cautioned that filing procedures which were geared to the secured party at the expense of the future purchaser or creditor would fail to provide the notice function for which they are designed. *Id.* at 336. However, see *In Re Page*, 6 UCC Rep.Serv. 250 (W.D. Ky.1968), wherein the court there suggests that a filing made in the proper place as of the time it is made will perfect a security interest created by the attachment of the security interest at a later time under UCC § 9–401(3).

The Kentucky appellate courts have frequently emphasized the notice requirements of the code. In *Riley v. Miller*, Ky.App., 549 S.W.2d 314, 315 (1977), we stated that the most obvious and important purpose behind the requirements set forth in KRS 355.9–402(1) is to put subsequent creditors on notice. See also F. Whiteside and T. Lewis, "Kentucky's Commercial Code— Some Initial Problems in Security", 50 *Ky. L.J.* 61 (1961) cited with approval in *Alloway v. Stuart*, Ky., 385 S.W.2d 41, 43 (1964).

In the absence of a statutory provision governing the proper place to file a continuation statement when a change of circumstances has occurred, one authority suggests if the secured party has notice, filing should be in the new county. If the secured party is without notice he should be allowed to continue the perfected status of his interest in the original county. G. Gilmore, 1 *Security Interests in Personal Property*, § 22.2 (1965). This view is consistent with what has been termed the "guiding premise" of the code's filing system: that the place of filing should be the place which would best

provide notice to the prospective secured party and not unduly burden the secured party. Welsh, "Judicial Interpretations of Article Nine of the Code", 37 *Tenn.L.R.* 273, 316 (1970). An application of this "guiding premise" to the filing of an amendment would require the amendment in the case before us to be refiled in the county of Burton's residence at the time of the amendment since the secured party, the appellant, had knowledge of the debtor's change of residence.

Authorities believing that the amendment should be filed in the county where the original financing statement is filed include R. Anderson, 4 *Anderson on the Uniform Commercial Code* § 9–402:36 (1971), and Homer Kripke, who was an Associate Reporter for the Review Committee for Article 9 of the Uniform Commercial Code. The principal argument advanced by Kripke is that if the code meant to require refiling in the county of the debtor's new residence it would have stated so. Kripke, "The 'Last Event' Test for Perfection of a Security Interest under Article 9 of the Uniform Commercial Code", 50 *N.Y.U.L.Rev.* 47, 70–73. Moreover, Kripke objects to requiring the amendment to be refiled in the new county because of the increased policing burden that the test would impose on the prior existing secured party. However, where the secured party has notice of the debtor's change of address, as in the case at bar, Kripke's argument seems to lose some of its force.

The conclusion we reach here is that the appellant, having notice of Burton's change of address at the time of the effectiveness of the amended financing statement, was required to file the amendment in Metcalfe County, and having not done so, appellee Fancher acquired clear title to the Glennwood mobile home by reason of the purchase of same at the execution sale. The judgment of the trial court is affirmed.

All concur.